UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MOUNTAIN VALLEY PROPERTY, INC., )<br>)<br>    Plaintiff,                  )<br>)<br>v.                                         )<br>)<br>APPLIED RISK SERVICES, INC., et al.,  )<br>)<br>    Defendants.          ) | 1:15-cv-00187-DBH |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

This action involves a dispute regarding an insurance program that Defendants allegedly promoted and in which program Plaintiff participated. Plaintiff alleges, inter alia, that Defendants collected unlawful fees and charges from Plaintiff in connection with the insurance program.

The matter is before the Court on Defendants' Motion to Dismiss (ECF No. 32). Through the motion, Defendants assert that the parties' dispute is subject to mandatory arbitration. Following a review of the pleadings, and after consideration of the parties' arguments, I recommend that the Court determine that the matter should be referred to arbitration, deny Defendant's request for dismissal, and stay further proceedings in this Court.

**BACKGROUND**

The facts set forth herein are derived from Plaintiff's first amended complaint, which facts are deemed true when evaluating the motion to dismiss.[1] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998). In addition, the Court may consider documents central to

---

[1] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

Plaintiff's claim. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

### *The First Amended Complaint*

Plaintiff is a property management company with headquarters in Carrabassett Valley, Maine. (First Am. Compl. ¶ 12.) Defendants are a related group of business associations formed and located outside of Maine.[2] Plaintiff contends that Defendants are "mere shells and alter egos of the others," and that they are "led by Applied Underwriters Captive Risk Assurance Company, Inc." (*Id.* ¶ 1.) Plaintiff uses the name "Underwriters" to refer to Applied Underwriters Captive Risk Assurance Company. (*Id.*) The parties also refer to Applied Underwriters Captive Risk Assurance Company as "AUCRA."

Defendants promoted a comprehensive insurance package known as SolutionOne as an inexpensive insurance alternative that integrated multiple lines of insurance, including workers' compensation insurance and employment practices liability insurance, and that also offered certain payroll and tax services, as well as profit sharing. (*Id.* ¶ 2.)[3] The marketing materials associated with SolutionOne represented that customers could trust Defendants as "one company," and that the Defendants were a "member" of Berkshire Hathaway, Inc. (*Id.*) Plaintiff signed "Defendants' SolutionOne contracts" through the period beginning December 23, 2010, and ending December 22, 2013. (*Id.* ¶ 5.)

---

[2] Defendant Applied Underwriters, Inc., is headquartered in San Francisco, California, and has its national operations center and principal office in Omaha, Nebraska. (First Am. Compl. ¶ 14.) Defendant Applied Risk Services, Inc., is similarly domiciled in Nebraska. (*Id.*) Defendant Applied Underwriters Captive Risk Assurance Company, Inc., is an insurance company formed under the laws of, and located in, the British Virgin Islands. (*Id.* ¶ 13.) It also maintains an administrative office in Omaha, Nebraska. (*Id.*) In addition to the named Defendants, Plaintiff alleges that the interrelated entities also include Berkshire Hathaway Inc., Continental Indemnity Company, California Insurance Company, North American Casualty Company, Applied Premium Finance, Inc., and Promesa Health. (*Id.* ¶ 14.)

[3] Plaintiff alleges that Defendants are engaged in "a common business enterprise" for purposes of the SolutionOne program. (First Am. Compl. ¶ 28.)

According to Plaintiff, upon enrollment, it received "a series of vague, inconsistent, and interrelated promises, representations, and agreements." (*Id.* ¶ 3.) Under the SolutionOne program, Plaintiff has been required to pay multiple times for workers' compensation insurance. (*Id.*) Additionally, the profit sharing plan was, in fact, a contract of insurance. (*Id.*)

Plaintiff's participation in the SolutionOne program is not governed by a single contractual document. (*Id.* ¶ 16.) Rather, Plaintiff's participation is governed by "a series of interdependent and interlocking agreements, promises, and representations among [Plaintiff], Defendants, and a series of disclosed and undisclosed entities allegedly related in some way to Berkshire Hathaway, Inc." (*Id.*) Some of the agreements were not disclosed to Plaintiff and Plaintiff is not a party to some of the agreements. (*Id.*)[4]

Plaintiff maintains that Defendants are not registered with the Maine Superintendent of Insurance and are not authorized to sell insurance in the State of Maine. (*Id.* ¶¶ 3, 19.) Plaintiff asserts that the SolutionOne program is evidently designed "to turn an approved guaranteed cost policy into an unapproved retrospectively rated one" without having to conform to applicable state and federal regulations. (*Id.* ¶ 22.)

Plaintiff contends that Defendants charged and collected unlawful fees and other charges in connection with the SolutionOne program, and seeks a return of the amounts that it paid to Defendants. Plaintiff also requests that the Court determine that Defendants are not entitled to arbitration on the alleged claims, and that the contracts are unenforceable.

---

[4] Plaintiff attached to its first amended complaint four agreements of which it was aware: a Reinsurance Participation Agreement (Ex. B); a Workers' Compensation and Group Warranty Reimbursement Insurance contract (Ex. C); a SolutionOne Services Agreement (Ex. D); and a Group Employment Practices Liability Certificate (Ex. E). Additional agreements that were not disclosed to Plaintiff include a Reinsurance Treaty between Underwriters and California Insurance Company, a "pooling arrangement" between Applied Underwriters, Inc. and its affiliates, an intercompany agreement between Applied Risk Services, Inc. and other Applied Underwriters, Inc. affiliates, and an intercompany agreement by which Underwriters, Applied Underwriters, Inc., California Insurance Company, and Continental Indemnity Company assigned certain accounts receivable to Applied Risk Services, Inc. (First Am. Compl. ¶ 17.)

*The Arbitration Agreement*

On May 21, 2015, Jeffrey Silver, Secretary and General Counsel for Defendant Applied Underwriters Captive Risk Assurance Co., Inc. (Defendant Underwriters) sent Plaintiff a demand for arbitration, which demand was based on the arbitration provision found in the Reinsurance Participation Agreement. (ECF No. 32-2.) Attached to the demand was the SolutionOne Services Agreement for participant 834001, dated December 23, 2010, and signed by Cynthia Hammond, Plaintiff's President. (*Id.*, PageID ## 514 – 15.) The agreement contained an arbitration provision. (*Id.* ¶ 12.) The Reinsurance Participation Agreement for participant 834001, executed by Ms. Hammond, was also attached to the arbitration demand. (*Id.*, PageID ## 516 – 521.) The Reinsurance Participation Agreement contains the arbitration clause upon which Defendants rely to support their motion to dismiss. Paragraph 13 of the Reinsurance Participation Agreement states:

> 13.   Nothing in this section shall be deemed to amend or alter the due date of any obligation under this Agreement. Rather, this section is only intended to provide a mechanism for resolving accounting disputes in good faith.
>
> (A)   It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation in order to protect the confidentiality of their relationship and their respective businesses and affairs. Any dispute or controversy that is not resolved informally pursuant to sub-paragraph (B) of Paragraph 12 arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association.
>
> (B)   All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of the Agreement, (2) the management or operations of the Company, or (3) any other breach of the Agreement or the transaction contemplated herein shall be settled amicably by good faith discussion among all of the parties hereto, and, failing such amicable settlement, finally determined exclusively by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause, or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration

clause.  All disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause.

  (C) Either party may initiate arbitration by serving written demand upon other party or parties.  The demand shall state in summary form the issues in dispute in a manner that reasonably may be expected to apprise the other party of the nature of the controversy and the particular damage or injury claimed.

  (D) The parties shall select a mutually acceptable arbitrator within 30 days of the demand for arbitration.  If the parties are unable to agree on an arbitrator within the 30 days, then each party shall appoint an arbitrator within 30 days thereof.

  ….

  (G) The arbitrator or arbitrators shall render a written decision (by majority determination if more than one arbitrator) and award within 30 days of the close of the arbitration proceeding.  Judgment upon the award rendered by the arbitrator or arbitrators may be entered by any court of competent jurisdiction in Nebraska or application may be made in such court for judicial acceptance of the award and an order of enforcement as the law of Nebraska may require or allow.

  ….

The Reinsurance Participation Agreement also includes the following choice of law provision:

  16. This Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska and any matter concerning this Agreement that is not subject to the dispute resolution provisions of Paragraph 13 hereof shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws.

Before he sent the May 21, 2015, demand for arbitration, Mr. Silver wrote to Plaintiff to demand payment under the SolutionOne program.  (First Am. Complaint, Ex. A, ECF No. 31-1.) In his letter, Mr. Silver wrote as a representative of Defendant Applied Underwriters, Inc. rather than Defendant Underwriters.  (*Id.*)  Mr. Silver asserted he would file a complaint in Nebraska state court in the event that payment was not made.  With his letter, Mr. Silver enclosed a draft complaint, which identified the plaintiff as Applied Risk Services, Inc., not Defendant Applied

Underwriters or Defendant Underwriters.  (*Id.*)  The complaint described Applied Risk Services (ARS) as the assignee of accounts receivable owed "Applied [Underwriters], CIC, CNI and [Defendant Underwriters]."  (*Id.*)

### DISCUSSION

**A.     The Federal Arbitration Act**

The Federal Arbitration Act (FAA) "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Soto–Fonalledas v. Ritz–Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011).  Section 4 of the FAA provides that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," may petition a federal district court that would otherwise have subject matter jurisdiction, "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.[5]

"To compel arbitration, the defendants 'must demonstrate that a valid agreement to arbitrate exists, that the[y are] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'"  *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014) (quoting *Soto–Fonalledas*, 640 F.3d at 474).  "A court may order parties to arbitrate a given dispute only if they have agreed to submit such a dispute to arbitration."  *Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*, 680 F.3d 118, 121 (1st Cir. 2012).  "It follows that a court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claim(s)."  *Id.* at 121 – 22.

---

[5] The FAA is based on the power of Congress to regulate commerce.  9 U.S.C. § 2.  The subject matter of the contract(s) in question in this case concerns interstate commerce.

Defendants maintain that Plaintiff agreed to arbitrate the disputed issues in this case. Plaintiff contends that an order compelling arbitration is not appropriate (a) because two of the Defendants are not parties to the agreement to arbitrate, (b) because the dispute extends to matters related to agreements other than the Reinsurance Participation Agreement, which is the only agreement that contains an arbitration provision, (c) because Defendants waived any right to arbitrate, and (d) because under Nebraska law, the agreement is unenforceable. The parties thus dispute whether they entered into a valid, enforceable agreement to arbitrate.

### 1.   *Enforceability of the Agreement to Arbitrate*

Plaintiff argues that under the applicable law, the arbitration provision is unenforceable. More specifically, Plaintiff argues that under Nebraska law, which Plaintiff argues controls based on the agreement's choice of law provision,[6] the arbitration clause is unlawful and thus unenforceable.

Before the Court considers the significance of Plaintiff's argument, the Court must first determine whether the Court decides the threshold arbitrability issue, or whether the arbitrator decides the issue.[7] Arbitrability questions normally entail "(1) disputes about whether the parties

---

[6] The Reinsurance Participation Agreement includes the following choice of law provision:

> 16. This Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska and any matter concerning this Agreement that is not subject to the dispute resolution provisions of Paragraph 13 hereof shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws.

Similarly, the SolutionOne Services Agreement provides:

> 13. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Nebraska without regard to choice of law.

(ECF No. 32-2.)

[7] The Court in *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300, 305 (D. Me. 2003), explained that "[a]n arbitrability issue arises where the parties to a contract dispute the existence of a valid arbitration agreement or the substantive scope of that agreement."

7

are bound by a given arbitration clause; and (2) disputes about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Kristian v. Comcast Corp.,* 446 F.3d 25, 42 (1st Cir. 2006). "As a general rule, and in the absence of an express agreement to the contrary, courts decide questions of arbitrability[.]" *Id.* at 122. However, the Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

In *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300 (D. Me. 2003), this Court summarized a court's review process when the parties dispute the validity of an arbitration agreement. The Court explained:

> [A] gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for the court to decide. Thus, a court must decide all questions of "arbitrability" before the parties can proceed to arbitration of the underlying dispute. However, judicial determination of arbitrability may be circumvented through contract. If the contracting parties provide clear and unmistakable evidence of an intent to arbitrate arbitrability, such threshold determinations are removed from the province of the court.

*Id.* at 305 (citations and internal quotation marks omitted.)

As a general rule, therefore, courts decide the arbitrability issue unless the parties clearly and unmistakably intended to arbitrate the issue. Because "judicial determination of arbitrability may be circumvented through contract," *id.*, one looks to the contract, at least initially, to determine the parties' intent. Here, the parties agreed in relevant part that "[a]ll disputes between the parties relating in any way to the execution and delivery, construction or enforceability of the Agreement … shall be finally determined by binding arbitration." (Reinsurance Participation Agreement ¶ 13(B).) By including the "enforceability" of the agreement within the scope of arbitration, the parties clearly and unmistakably agreed to arbitrate the issue of arbitrability. Indeed, the Sixth

Circuit, construing the identical language, reached the same conclusion. *Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 590 Fed. App'x 482 (6th Cir. 2014).[8]

Plaintiff nevertheless argues that the arbitrability issue is appropriate for judicial determination. In support of its argument, Plaintiff contends that a judicial determination is warranted "where the question of arbitrability rests not on the language of the agreement, but on the interplay of federal statutes concerning state regulation of the business of insurance." (Pl. Opposition at 10.)

As support for its argument, Plaintiff cites the McCarran – Ferguson Act, 15 U.S.C. §§ 1011 – 1015, which provides in relevant part:

> (a) State regulation
>
> The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) Federal regulation
>
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: ….

*Id.* § 1012. Under the Act, unless Congress establishes a law specifically related to the business of insurance, state law enacted to regulate insurance will not be overridden by federal law. *Id.* In effect, § 1012(b) "immunizes against federal statutory preemption those state statutes enacted 'for

---

[8] In *Rent-A-Center*, the Supreme Court considered an agreement with similar language. 561 U.S. at 68 ("[T]he Arbitrator shall have exclusive authority to resolve any dispute relating to the … enforceability … of this Agreement.") The issue for the Court was whether the threshold issue of arbitrability should be decided by the district court because the respondent challenged the arbitration agreement as unconscionable under Nevada law. The Court rejected respondent's argument, and held that unless respondent challenged the validity of the specific agreement to arbitrate the arbitrability issue, the matter should be referred to arbitration. After concluding that the parties' agreement evidenced a clear and unmistakable intent to arbitrate the enforceability of an agreement, citing *Rent-A-Center*, the Sixth Circuit in *Milan* engaged in a similar analysis and determined that arbitration was appropriate. 590 Fed. App'x at 486. Likewise, in this case, Plaintiff does not challenge specifically the parties' agreement to arbitrate the arbitrability issue. Accordingly, under the reasoning of *Rent-A-Center*, Plaintiff cannot rely on the nature of its challenge to avoid arbitration.

the purpose of regulating the business of insurance.'" *Ruthardt v. United States*, 303 F.3d 375, 380 (1st Cir. 2002); *see also id.* at 380 n.2 (noting that the Act "effectively safeguards state insurance regulation against preemption through the dormant Commerce Clause doctrine").

Because the Nebraska Arbitration Act provides that an arbitration provision is not valid or enforceable in "any agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract,"[9] Plaintiff contends that under the McCarran – Ferguson Act, the Federal Arbitration Act is "reverse preempted" by the Nebraska law. The Supreme Court of Nebraska in fact has held that the McCarran – Ferguson Act prevents the FAA from preempting Nebraska law prohibiting arbitration clauses in contracts of insurance. *Speece v. Allied Professionals Ins. Co.*, 853 N.W.2d 169, 175 (Neb. 2014); *Kremer v. Rural Cmty. Ins. Co.*, 788 N.W.2d 538, 553 (Neb. 2010).[10]

Assuming, arguendo, that Nebraska law applies,[11] Plaintiff's "reverse preemption" argument is not without merit. A principal issue is whether the pertinent provision in the Nebraska Arbitration Act constitutes state regulation of the business of insurance as contemplated by the

---

[9] Neb. Rev. Stat. § 25-2602.01(f)(4).

[10] The court applied the doctrine of "reverse preemption," concluding that the McCarran – Ferguson Act accords preemptive force to state regulation of insurance, and that the insurance exception stated in the Nebraska Arbitration Act overrides the FAA because the FAA does not specifically relate to the business of insurance. *Kremer*, 788 N.W.2d at 553.

[11] The parties dispute the scope of the application of Nebraska law. "A federal court sitting in diversity must apply the conflict of law rules of the state in which it sits, in this case, Maine." *Walker v. Unum Life Ins. Co. of Am.,* 530 F. Supp. 2d 351, 353 (D. Me. 2008). Thus, despite the choice of law provision in the parties' agreement, Defendants argue that Nebraska law does not govern the parties' forum selection, only the resolution of disputes arising out of their relationship. (Defendants' Reply at 1 – 2.) Because Plaintiff is domiciled in Maine, and because the parties' relationship calls for, *inter alia*, Defendants' provision of products and/or services in Maine, it is possible that the parties' ability to enter into an arbitration agreement was governed by Maine law. Unlike Nebraska law, the Maine Uniform Arbitration Act does not include a prohibition against arbitration of insurance disputes. 14 M.R.S. §§ 5927 – 5949. Additionally, the First Circuit has held that statutes like 24-A M.R.S. § 2433 do not prevent referral for arbitration. *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 81 (1st Cir. 2000).

10

McCarran – Ferguson Act. While some courts arguably support Plaintiff's position,[12] other courts have reached a contrary conclusion.[13] A court should not, however, consider the relative merit of a party's challenge to the enforceability of an arbitration provision when assessing the threshold question of whether the court or the arbitrator is to decide the arbitrability issue. Otherwise, for all practical purposes, the court would decide the arbitrability issue in most, if not all, cases regardless of the parties' clear expression of a contrary intent. The Sixth Circuit in *Milan* recognized that the merit of the challenge is not appropriate for a court's consideration when a court considers the threshold issue as to whether arbitrability is determined by the court or an arbitrator. The Court observed, "[Plaintiff] *may* be right about [the fact that the arbitration provision is unenforceable under Nebraska law], but enforceability is a question the parties expressly agreed to submit to arbitration." *Milan*, 590 Fed. App'x at 486 (emphasis in original).[14]

---

[12] *See McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854, 858 (11th Cir. 2004) (holding "that a provision in a state's arbitration code excepting insurance contracts is a law regulating the business of insurance," considering the Georgia Arbitration Code, Ga. Code Ann. § 9-9-2); *Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821, 824 (8th Cir. 2001) (per curiam) ("[E]ven though it is not part of the Missouri Insurance Code, section 435.350 is limited to entities within the insurance industry because insurance is the only industry singled out for an across-the-board invalidation of arbitration clauses.") (considering the Missouri Arbitration Act, Mo. Ann. Stat. § 435.350); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 934 (10th Cir. 1992) ("For the application of the McCarran-Ferguson Act it is not necessary … that the state statute 'regulate the business of insurance' be [sic] in the form of an insurance code or an act relating only to insurance.") (considering the Kansas Arbitration Act, Kan. Stat. Ann. § 5-401).

[13] In *Bixler v. Next Fin. Group, Inc.*, 858 F. Supp. 2d 1136, 1146 (D. Mont. 2012), a federal district court determined that the FAA preempts a Montana statute that is virtually identical to the Nebraska statute. The court reasoned that because the prohibition against arbitration provisions in insurance contracts is part of the state's general arbitration statute, and not a statute of insurance, the preemption exception for state regulation of insurance found in the McCarran – Ferguson Act is not applicable. *Id.* (discussing Mont. Code Ann. § 27-5-114 and citing *Nw Corp. v. Nat'l Union Fire Ins. Co.*, 321 B.R. 120 (2005) (holding that the Montana Insurance Code is Montana's exclusive method of regulation of business of insurance and that § 27–5–114 was not enacted for the purpose of regulating the business of insurance in Montana)). In *Randazzo Enter., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 5:14-cv-02374, 2014 WL 6997961 (N.D. Cal. Dec. 11, 2014), construing the same contract currently at issue in this case, the court concluded that Nebraska law applied only for purposes of "determining the merits of the dispute arising under the [Reinsurance Participation Agreement]," but not for purposes of determining the legality of the arbitration clause. *Id.* at *3 (citing *Sovak v. Chugai Pharm. Co.,* 280 F.3d 1266, 1270 (9th Cir. 2002), and *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000)). Additionally, the court reasoned that, "even if Nebraska law were invoked …, it is preempted by the FAA." *Id.*

[14] Following the Sixth Circuit's decision in *Milan*, the matter proceeded to arbitration. The arbitrators determined that under Nebraska law, the arbitration provision was unenforceable. (ECF No. 43.)

11

Similarly, in this case, the parties expressly agreed to arbitrate enforceability. That is, the parties clearly and unmistakably intended to arbitrate the arbitrability issue. Accordingly, whether Nebraska law applies and whether it prohibits enforcement of the arbitration provision are, in the first instance, issues for the arbitrator to decide.[15]

### 2.     *Applicability of the arbitration provision to Defendants*

Plaintiff argues that Defendants' motion must be denied because certain Defendants are not party to the arbitration agreement. "While it is generally true that 'a contract cannot bind a nonparty,' *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002), there are exceptions allowing non-signatories to compel arbitration." *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 63 n.2 (1st Cir. 2003). "A non-signatory may … acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract." *Id.* Under both Maine law and Nebraska law, a third-party to a contract may be a beneficiary entitled to enforce contract provisions if that right was within the expectation or intention of the parties to the contract. *Davis v. R C & Sons Paving, Inc.*, 26 A.3d 787, 790, 2011 ME 88, ¶ 12; *Podraza v. New Century Physicians of Neb., LLC*, 789 N.W.2d 260, 267 (Neb. 2010).

The preliminary recitals of the Reinsurance Participation Agreement reflect that the Agreement is made by Defendant Underwriters and Plaintiff, but that in order for Plaintiff to "participat[e] in [Defendant Underwriters] segregated protected cell reinsurance program," Defendant Underwriters "entered into a Reinsurance Treaty … with California Insurance Company … and, through its pooling arrangement, with other affiliates of Applied Underwriters,

---

[15] Under similar reasoning, to the extent that Plaintiff argues that arbitration is not appropriate because the arbitration provision applies only to "accounting disputes" and Plaintiff's complaint includes claims other than accounting disputes, the arbitrator would decide which issues are within the scope of the parties' arbitration agreement. *See Rent-A-Center*, 561 U.S. at 68 – 69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

Inc., including, but not limited to Continental Indemnity Company." (Reinsurance Participation Agreement at 1.) The recitals further provide that the Reinsurance Participation Agreement is designed to enable Plaintiff (as Participant) to "share in the underwriting results of the Workers' Compensation policies of insurance issued for the benefit of the Participant by the Issuing Insurers." (*Id.*) The Agreement identifies Defendant Applied Risk Services, Inc. as the appointed "billing agent." (*Id.* at 2, ¶ 8.)

Plaintiff names three Defendants in its amended complaint: Applied Risk Services, Inc., Applied Underwriters, Inc., and Applied Underwriters Captive Risk Assurance Company, Inc. (Defendant Underwriters). Plaintiff alleges that Defendants are "each mere shells and alter egos of the others." (First Am. Compl. ¶ 1.) Plaintiff does not distinguish among the Defendants in its claims and requests for relief.

Particularly given Plaintiff's contention that Defendants are alter egos of each other, the arbitration provision should benefit equally all of the Defendants. Plaintiff asserts claims against all of the Defendants based upon the Reinsurance Participation Agreement despite the fact that two of the Defendants are not signatories to the agreement. If as Plaintiff alleges, Defendants are liable under the agreement, logic dictates that Defendants should be considered beneficiaries of the arbitration provision.[16] As such, they minimally are entitled to request a stay of proceedings against them following a referral for arbitration. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). The fact, therefore, that some of the Defendants are not signatories to the agreement does not preclude arbitration.

---

[16] For example, insofar as Defendant Applied Risk Services, Inc., is designated a "billing agent" in the Reinsurance Participation Agreement, it "is entitled to the protection of [its] principal's arbitration clause when the claims against [it] are based on [its] conduct as an agent." *Grand Wireless*, 748 F.3d at 11.

### 3. *Plaintiff's waiver argument*

Plaintiff argues that Defendants, by sending a collection letter threatening litigation in a Nebraska court, waived any right they might otherwise have to demand arbitration under the Reinsurance Participation Agreement. (Opposition at 17.) Because they alleged that Defendants "intentionally waived any right to arbitrate," Plaintiff argues the Court must accept the allegation as true and deny Defendants' motion to compel arbitration. (*Id.*) While the Court accepts the factual assertion that Defendants threatened litigation in a Nebraska court, the Court is not required to accept Plaintiff's assertion as to the legal significance of that act. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Moreover, because the mere threat of litigation does not constitute litigation, a finding of waiver might not be appropriate on the facts alleged. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 132 (2d Cir. 1997). In any event, Plaintiff's waiver argument presents the type of issue that an arbitrator should resolve. *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.'") (citation omitted, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[T]he phrase 'question of arbitrability' [is] *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus '"procedural" questions which grow out of the dispute and bear on its final disposition' [such as waiver] are presumptively *not* for the judge, but for an arbitrator, to decide.").

**CONCLUSION**

Based on the foregoing analysis, I recommend that the Court determine that the matter should be referred to arbitration, thereby effectively granting in part Defendants' Motion to Dismiss (ECF No. 32). Given the arbitrability issues that are presented, I recommend that the Court deny Defendants' request for dismissal, and enter a stay of this action pursuant to 9 U.S.C. § 3[17] to permit the matter to proceed to arbitration.[18]

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of December, 2015.

---

[17] 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Although Defendants moved for dismissal, in their motion and in their reply memorandum in support of their motion, Defendants urged the Court to stay the matter in deference to arbitration proceedings. (Motion at 7; Reply at 2.)

[18] If the Court adopts this recommendation, the Court might consider an order that requires the parties to file periodic reports regarding the status of the arbitration proceedings.

15